# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia



| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Google Reverse Location Search | )<br>)<br>) Case No. 3:18sw222<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Google Buisness Records of Reverse Location Search, more fully described in Attachment A.

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:
See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951 | Hobbs Act Robbery |
| 18 U.S.C. § 924(c) | use a firearm in a crime of violence to wit robbery |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Philip Johnakin
*Printed name and title*

Sworn to before me and signed in my presence.

/S/
David J. Novak
United States Magistrate Judge

Date: 09/27/2018

*Judge's signature*

City and state: Richmond, VA                              Hon. David J. Novak, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

**FILED UNDER SEAL**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, 1600 AMPHITHEATRE PARKWAY, MOUNTAIN VIEW, CALIFORNIA 94043 | Case No. 3:18SW222 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A WARRANT TO SEARCH AND SEIZE**

Your affiant, Philip Johnakin, being duly sworn, hereby states:

## I. Affiants Background and Experience

1. Your affiant is a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I have over eighteen years of law enforcement experience stemming from employment as a Police Officer with the Henrico County Division of Police. Currently, I am a duly appointed Task Force Officer with the Federal Bureau of Investigation (FBI) and have been so since October 2015. I am assigned to the Richmond FBI's Central Virginia Violent Crimes Task Force and my duties include investigating bank robberies, armored car robberies, extraterritorial offenses, kidnappings, armed carjackings, and theft of government property. I have investigated numerous criminal violations and have obtained arrest and search warrants. I have personally participated in the investigation set forth below. The crimes I investigate are violent and usually involve two or more individuals and I am familiar with the methods violent offenders use to conduct their illegal activities, to include their communication methods.

2. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the FBI and other law enforcement agencies; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another FBI agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3. I am aware that Title 18 of the United States Code, Section 2113 (a), makes it a crime for anyone to take or attempt to take by force, intimidation, or extortion, of any property, money or any other thing of value belonging to, or in the care, custody, control, management or possession of any bank. I am also aware Title 18 of the United States Code, Section 924 (c), makes it a crime for anyone to use a firearm in a crime of violence.

## RELEVANT STATUTORY PROVISIONS

18 U.S.C. § 1951 and 2, interference with commerce by threats of violence and Aiding and Abetting.

18 U.S.C. § 371/1951, Conspiracy to interference with commerce by threats of violence.

18 U.S.C. § 924 (c), use of a firearm in a crime of violence have been committed.

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

4. A cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communication through radio signals. Cellular telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other cellular telephones or traditional "landline" telephones. Cellular telephones rely on cellular towers, the location of which may provide information on the location of the subject telephone.

Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

5. Google is an Internet company which, among other things, provides electronic communication services to subscribers. Google allows subscribers to obtain email accounts at the domain name gmail.com. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

6. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

7. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of login (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP

address information can help to identify which computers or other devices were used to access the email account.

8. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. Further, information maintained by the email provider can show how, where, and when the account was accessed or used. Based on my training and experience, I have learned that Google also maintains records that may reveal other Google accounts accessed from the same electronic device, such as the same computer or mobile device, including accounts that are linked by Hypertext Transfer Protocol (HTTP) cookies, which are small pieces of data sent from a website and stored in a user's Internet browser.

9. Google has developed an operating system for mobile devices, including cellular phones, known as Android. Nearly every cellular phone using the Android operating system has an associated Google account and users are prompted to add a Google account when they first turn on a new Android device.

10. Based on my training and experience, I have learned that Google collects and retains location data from Android-enabled mobile devices when a Google account user has enabled Google location services. The company uses this information for location-based advertising and location-based search results. This information is derived from GPS data, cell site/cell tower information, and Wi-Fi access points.

11. Location data can assist investigators in understanding the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).

## **PROBABLE CAUSE**

12. The United States, through the FBI's Central Virginia Violent Crimes Task Force (CVVCTF) is conducting a criminal investigation involving a series of five armed commercial robberies of the Dollar Tree, located at 8920 Patterson Avenue, Henrico, VA.

13. The first robbery took place on March 19, 2018, when two UNKNOWN SUBJECTS, entered the Dollar Tree located at 8920 Patterson Avenue, Henrico, VA, just prior to closing. As soon as the UNKNOWN SUBJECTS entered the business, UNKNOWN SUBJECT1 produced a semi-automatic handgun, and pointed it at R.B, victim store clerk, and demanded United States currency from the cash register drawer, as well as the safe. R.B. told the UNKNOWN SUBJECTS they did not have a safe. UNKNOWN SUBJECT 1 then placed the firearm into R.B.'s back which made him/her scream. After R.B. screamed C.P., victim store manager, opened the door to the office where she was counting money to check on R.B. C.P. had United States currency in her hand when she opened the door, so the UNKNOWN SUBJECTS then rushed into the office with C.P. The UNKNOWN SUBJECTS demanded more money from C.P., who opened the store's safe and gave the UNKNOWN SUBJECTS approximately $1,556.00 in United States currency belonging to Dollar Tree. The UNKNOWN SUBJECTS then fled the business on foot towards Starling Drive. The UNKNOWN SUBJECTS were described as black males wearing black full face masks, dark colored shirts, dark colored pants, and grey or black gloves. Also, UNKNOWN SUBJECT1 was armed with a semi-automatic handgun.

14. The second robbery took place on June 22, 2018, when an UNKNOWN SUBJECT, entered the Dollar Tree located at 8920 Patterson Avenue, Henrico, VA, just prior to closing. The UNKNOWN SUBJECT entered the front door of the store and moved towards C.P. and demanded to be taken to the office. The UNKNOWN SUBJECT then demanded the United States currency from the safe. The UNKNOWN SUBJECT placed the night deposit bag into another bag, and then removed United States currency from two cash register tills into the same bag. The UNKNOWN SUBJECT stole approximately $2,066.00 in Untied States currency belonging to Dollar Tree, then fled the business on foot towards Starling Drive. The

UNKNOWN SUBJECT was described as a black male wearing a black full face mask, a dark colored shirt, dark colored pants, black gloves, and armed with a semi-automatic handgun.

15. The third robbery took place on July 3, 2018, when an UNKNOWN SUBJECT, entered the Dollar Tree located at 8920 Patterson Avenue, Henrico, VA, just after closing. K.C., victim clerk, was walking the store to insure all of the customers had come to the front of the store with their items. K.C. was approached from behind by an UNKNOWN SUBJECT dressed in all black clothing, a black ski mask, and armed with a silver and black semi-automatic handgun. The UNKNOWN SUBJECT demanded K.C. take him to the office. When the UNKNOWN SUBJECT and K.C. got to the office, the UNKNOWN SUBJECT demanded K.C. open the safe and give him the United States currency from inside. K.C. complied, giving the UNKNOWN SUBJECT approximately $2,094.00 in United States currency belonging to Dollar Tree. The UNKNOWN SUBJECT then took K.C.'s cellular device and ordered the front door, which had been locked at closing time, to be opened. The UNKNOWN SUBJECT then fled on foot towards Starling Drive.

16. The fourth robbery took place on August 6, 2018, when an UNKNOWN SUBJECT robbed T.B., victim store manager for the Dollar Tree at 8920 Patterson Avenue, as he/she was attempting to deposit store money into the Wells Fargo night-deposit box, located at 9000 Patterson Avenue, Henrico, VA. This Wells Fargo location is less than 500 yards from the Dollar Tree store. T.B. pulled up to the ATM/night-deposit lane. As T.B. exited his/her vehicle an UNKNOWN SUBJECT approached T.B. from Starling Drive, armed with a semi-automatic handgun in his right hand. The UNKNOWN SUBJECT demanded the night-deposit bag from T.B. T.B. complied, giving the UNKNOWN SUBJECT the night-deposit bag containing approximately $1,027.00 in United States currency belonging to Dollar Tree. The UNKNOWN SUBJECT then fled towards Gayton Road. The UNKNOWN SUBJECT was described as a black male, thin, but muscular, wearing a dark colored skull cap, dark colored long-sleeve shirt, dark colored pants, and a skeleton mask covering the lower half of his face.

17. The fifth robbery took place on September 4, 2018, just after the Dollar Tree located at 8920 Patterson Avenue, Henrico, VA had closed at 8:00 PM. T.K., victim clerk, and L.S. were asked by the store manager, C.F., to walk the store and make sure no one else was in the store. C.F. stood at the front door letting customers out after they purchased their items. T.K. and walked to the back of the store to "sweep" it for additional customers. As T.K. and L.S.

made it to the rear of the store they encountered two UNKNOWN SUBJECTS, described as black males dressed in all black clothing, each armed with a semi-automatic handgun. UNKNOWN SUBJECT 1, later identified as ALI COUSINS JR., pointed a handgun at T.K.'s head and ordered him/her to the front of the store. UNKOWN SUBJECT 2 walked L.S. to the front of the store. C.F. saw UNKNOWN SUBJEC 2, who pointed his firearm at C.F. and C.F. fled out the front door. COUSINS walked T.K. to register 3, which was manned by CHRISTINA PILGRIM. COUSINS demanded the United States currency from the register. PILGRIM did not open the register, so T.K. opened the cash register, removed the United States currency from the register, and placed $260.00 in Untied States currency belonging to Dollar Tree on the counter to the rear of the checkout station. COUSINS also ordered T.K. to give him the United States currency from under the register till. T.K. removed the register till and showed COUSINS there was no United States currency under it. COUSINS then picked up $260.00 in United States currency and fled the store on foot.

18. On September 4, 2018, after the robbery, COUSINS fled the Dollar Tree and got into the driver's seat of a 2009 Nissan Maxima, Virginia registration VZY-5756, registered to Brenyon Pilgrim at 8406 Ridge Road, Henrico, VA. COUSINS then fled the area of the robbery. Law enforcement officers followed the vehicle until members of the Henrico Police attempted to conduct a traffic stop on the vehicle at the corner of Starling Drive and Sparrow Drive. COUSINS's vehicle pulled onto Sparrow Drive and stopped suddenly. Then COUSINS, the driver and only occupant, jumped from the driver's seat and fled on foot. After a short foot chase, law enforcement lost sight of COUSINS. A perimeter was set up in the area and police K-9 units responded to the area. COUSINS was seen again and a second foot chase occurred, during which COUSINS fired a single round. Additional law enforcement officers responded to the area and the perimeter was widened. K-9 officers started to search the area resulting in an additional foot chase of COUSINS. During one of the foot chases, COUSINS dropped his cellular device on the ground. The devices was located, seized, and placed into evidence by law enforcement.

19. As a result of a continued ground search, law enforcement found a wet hand print near the crawl space entrance to 9019 Farmington Drive, Henrico, VA. A search of this area was conducted and led to locating ALI COUSINS JR., DOB: XX/XX/1987, SSN: XXX-XX-0679, black male, hiding in the crawl space. COUSINS was taken into custody without incident. The

crawl space COUSINS had been hiding under was cleared by law enforcement. As a result of the search, law enforcement located a wadded up ball of United States currency placed into the insulation and floor joist. The United States currency was seized and placed into evidence. Additional searches conducted by law enforcement resulted in the location of a silver and black semi-automatic handgun, a Jimenez, Model Nine, 9mm, Serial Number 379555, under the house at 9014 Sparrow Drive, Henrico, VA, which shared a backyard with 9019 Farmington Drive, Henrico, VA, where COUSINS was located.

20. COUSINS was transported to the Henrico Police headquarters where he was interviewed. COUSINS was advised of his *Miranda* Rights and spoke to law enforcement officers. COUSINS stated he and another person, who he did not identify, robbed the Dollar Tree at 8920 Patterson Avenue, Henrico, VA. COUSINS admitted he was the masked person who walked T.K. to the front of the store and demanded the United States currency from the cash register. COUSINS stated he had robbed the same Dollar Tree store on at least three other occasions, but did not rob the manager at the Wells Fargo Bank. COUSINS stated he had purchased the firearm he used in the robbery about 1 year prior and he used the same firearm each time he robbed the Dollar Tree. COUSINS further stated he used the same Nissan Maxima each time he robbed the Dollar Tree. Each time, COUSINS would go to PILGRIM's home, located at 8406 Ridge Road, Henrico, VA, take the vehicle, and then return it after the robbery. COUSINS went on to say he had called PILGRIM while he was hiding from law enforcement and told her, PILGRIM, to tell law enforcement it was him who robbed the store. During the interview with law enforcement, COUSINS identified the cellular devices located by law enforcement on the ground after chasing him as belonging to him. COUSINS used the cellular devices to call his mother while with law enforcement.

21. During the course of the investigation law enforcement learned COUSINS had been in a romantic relationship with PILGRIM and PILGRIM was pregnant with his child. A review of the Henrico Police incident reports showed PILGRIM had been present for at least one other robbery, the one on July 3, 2018. On September 18, 2018, law enforcement spoke with a coworker of PILGRIM at Dollar General and found PILGRIM worked on June 22, 2018 and July 3, 2018.

22. On September 4, 2018, law enforcement officers interviewed PILGRIM at the Dollar Tree located at 8920 Patterson Avenue, Henrico, VA, during the pursuit of COUSINS.

8

After learning the vehicle used as the getaway car was registered to PILIGRIM's husband at her home address, law enforcement requested to search PILGRIM's cellular devices. PILGRIM consented and allowed law enforcement to download her cellular devices. A search of these devices showed the phone number used by the cellular devices was **(804) 873-3127**. A review of the call log showed PILGRIM had made a phone call to **(804) 839-5576**, stored as "Ali My Future." PILGRIM was asked about this number and stated it was ALI COUSINS, a friend. PILGRIM's cellular devices received a phone call on September 4, 2018, from (804) 839-5576 at 8:39 PM, after the robbery of the Dollar Tree and as COUSINS was actively fleeing from law enforcement. PILGRIM received a phone call on that same date from (804) 839-5576 at 22:59 PM. The phone showed more than 35 phone calls between (804) 839-5576 and (804) 873-3127 from August 9, 2018 to September 4, 2018. A review of the SMS messages (Text Messages) between (804) 839-5576 and (804) 873-3127 found more than 3200 SMS messages had been exchanged from March 2018 and September 4, 2018.

23. On September 5, 2018 law enforcement interviewed PILGRIM at her residence. PILGRIM admitted to knowing COUSINS, but stated she did not know COUSINS was using her husband's car to commit the robberies. PILGRIM stated she did not know it was COUSINS who had been committing the robberies. PILGRIM was confronted with the statement made by COUSINS in which he stated he spoke to her, PILGRIM, after the robbery and told her, PILGRIM, to tell law enforcement he was the one who robbed the Dollar Tree. PILGRIM stated the conversation never took place.

24. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to search the business records maintained by Google.

25. In my training and experience, I know that when people act in concert with one another to commit a crime they frequently utilize cellular telephones to communicate with each other through voice calls, text messages, and emails. These cellular telephones allow them to plan, coordinate, execute, and flee the scene of crimes. Furthermore, I know people often take pictures utilizing their cellular telephones that may implicate them in a crime, i.e., possessing a firearm, posing with large quantities stolen items, or large amounts of cash.

26. Also, based on my training, experience, and knowledge, records retained by Google may show whether COUSINS cellular device was in or around relevant locations in Henrico, Virginia, namely 8920 Patterson Avenue, 8406 Ridge Road, and 9000 Patterson Avenue, at or during the times of the robberies which occurred at the dates, times, and locations described throughout this affidavit and, more particularly, identified in Attachment A.

27. The latitude and longitude coordinate for the address of 8920 Patterson Avenue, Henrico, VA is Latitude: 37.595242, Longitude: -77.575333. The latitude and longitude coordinate for the address of 8406 Ridge Road, Henrico, VA is Latitude: 37.588010 Longitude: -77.561270. The latitude and longitude coordinate for the address of 9000 Patterson Avenue, Henrico, VA is Latitude: 37.595720 Longitude: -77.576470.

## CONCLUSION

28. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

29. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in control of Google there exists evidence of a crime, contraband and/or fruits of a crime. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that the Google account(s) described in Attachment A contains the fruits, instrumentalities, and evidence of crimes described in Attachment B, specifically, that the account was used to produce, transport, receive, distribute, possess, and/or access information that would facilitate federal violations. Accordingly, a search warrant is requested.

30. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(I).

31. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully Submitted,

Philip Johnakin
Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this 27th day of September, 2018.

/S/
David J. Novak
United States Magistrate Judge

11

## ATTACHMENT A
## PROPERTY TO BE SEARCHED

This warrant is directed to Google LLC, headquartered at 1600 Amphitheatre Parkway, Mountain View, California, and applies to (1) GPS, WiFi or Bluetooth sourced location history data generated from devices that reported a location within the geographical region bounded by the following latitudinal and longitudinal coordinates, dates, and times ("Initial Search Parameters") and (2) identifying information for Google Accounts associated with the responsive location history data:

March 19, 2018
From 8:30 PM to 9:02 PM (Eastern Standard Time)

June 22, 2018
From 8:40 PM to 9:02 PM (Eastern Standard Time)

July 3, 2018
From 8:00 PM to 9:10 PM (Eastern Standard Time)

August 6, 2018
From 8:30 PM to 9:04 PM (Eastern Standard Time)

September 4, 2018
From 7:30 PM to 8:06 PM (Eastern Standard Time)

Geographical area identified as

A radius of 375 meters around 8920 Patterson Avenue, Henrico, VA, with a latitude/longitude coordinate in the format is Latitude: 37.595242, Longitude: -77.575333



August 6, 2018
From 8:30 PM to 9:04 PM (Eastern Standard Time)

Target Location:

Geographical area identified as

A radius of 375 meters around 9000 Patterson Avenue, Henrico, VA, with a latitude/longitude coordinate in the format is Latitude: 37.595720 Longitude: -77.576470



March 19, 2018
From 8:15 PM to 9:25 PM (Eastern Standard Time)

June 22, 2018
From 8:00 PM to 9:20 PM (Eastern Standard Time)

July 3, 2018
From 7:45 PM to 9:20 PM (Eastern Standard Time)

August 6, 2018
From 7:30 PM to 9:20 PM (Eastern Standard Time)

September 4, 2018
From 6:45 PM to 7:35PM (Eastern Standard Time)

Geographical area identified as

A radius of 300 meters around 8406 Ridge Road, Henrico, VA, with a latitude/longitude coordinate in the format is Latitude: 37.588010 Longitude: -77.561270.

